**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:25-cv-60945-LEIBOWITZ/AUGUSTIN-BIRCH**

**JEFFREY KELLEY,**

*Plaintiff*,

*v.*

**CITY OF LAUDERHILL, FLORIDA,**

*Defendant*.
_______________________________________/

# ORDER ADOPTING REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon United States Magistrate Judge Augustin-Birch's Report and Recommendation to Deny Plaintiff's Motion for Partial Summary Judgment, Grant Defendant's Motion for Summary Judgment, and Deny as Moot Defendant's Daubert Motion and Motion To Strike [ECF No. 87] (the "R&R"). The undersigned referred the matter to Magistrate Judge Augustin-Birch for a report and recommendation consistent with 28 U.S.C. § 636(b)(1)(B), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of the Local Magistrate Judge Rules. [ECF No. 78]. Plaintiff filed timely objections to the R&R, (the "Objections") [ECF No. 88], to which Defendant responded, [ECF No. 89]. The parties' statements of material facts were filed on the docket, [*see* ECF Nos. 49, 53, 61, 66, 72, 76], along with the parties' Joint Statement of Undisputed Facts, [ECF No. 79]. After due consideration and upon *de novo* review, the Court **ADOPTS** Judge Augustin-Birch's R&R [**ECF No. 87**] as explained in this Order. Plaintiff's Objections [**ECF No. 88**] are **OVERRULED**.

## I. BACKGROUND

Jeffrey Kelley ("Plaintiff") became a Fire Lieutenant with the City of Lauderhill, Florida ("Defendant") on September 16, 2019. [ECF No. 79 ¶ 3]. The parties agree that in his position as a

Fire Lieutenant, Plaintiff "was responsible for various tasks including but not limited to 'supervis[ing] fire protection operations, operat[ing] or direct[ing] operation of fire trucks on emergency calls, … [and] mak[ing] decision as to mode of fire combat based on type of fire and circumstances….'" [*Id.* ¶ 5]. This position required Plaintiff to exercise judgment, decisiveness, and creativity. [*Id.* ¶ 6]. Between 2019 and 2024, Plaintiff received favorable evaluations from Defendant. [*Id.* ¶ 8].

Plaintiff has a history of substance abuse stemming back to college, [ECF No. 79 ¶¶ 9–13]. On October 31, 2019, Plaintiff had a verbal argument with his then-wife, which resulted in the police visiting his home. [*Id.* ¶¶ 15–16]. Defendant then placed Plaintiff on sick leave while Plaintiff sought treatment at Transitions Recovery Program. [*Id.* ¶ 20]. On December 16, 2019, Defendant placed Plaintiff on administrative leave with pay. [ECF No. 79 ¶ 21]. On December 26 and 27, 2019, Dr. Stock conducted a psychological fitness for duty evaluation on Plaintiff and deemed Plaintiff fit for duty with mandatory counseling and randomized drug testing. [*Id.* ¶¶ 22–23]. In March 2020, Plaintiff and Defendant executed a reinstatement agreement, subjecting Plaintiff's employment to certain conditions, such as a probationary period, participation in psychotherapy, random drug and alcohol testing, and termination of Plaintiff's employment upon failure of any drug test. [*Id.* ¶ 24].

In 2023, officers from the Broward Sheriff's Office placed Plaintiff under the Baker Act and transported him to Woodmont Hospital. [ECF No. 79 ¶ 25]. Defendant granted Plaintiff FMLA leave from May 6 through June 23, 2023. [*Id.* ¶ 29]. The Assistant Clinical Director at the International Association of Fire Fighters ("IAFF") Center authored a letter that Plaintiff was cleared to work on June 23, 2023. [*Id.* ¶ 32]. On that same day, Defendant placed Plaintiff on administrative leave with pay pending a psychological fitness for duty evaluation with Dr. Brian Mangan on June 28, 2023. [*Id.* ¶ 33]. Dr. Mangan determined that Plaintiff was psychologically fit for duty, with suggested conditions for employment including Plaintiff's ongoing treatment, random drug testing, and periodic meetings

with his immediate supervisor. [*Id.* ¶ 36]. After receiving that report, Defendant and Plaintiff entered into a second return-to-work agreement. [*Id.* ¶ 38].

On January 4, 2024, Plaintiff ingested cocaine and prescription Xanax "which caused him to have a psychotic incident where he believed that intruders had entered his home whereby Plaintiff grabbed his handgun and discharged it inside of his empty residence." [ECF No. 79 ¶ 39]. Responding officers decided that Plaintiff's behavior qualified under the Baker Act "because he was not making sense and 'was seeing things that weren't there.'" [*Id.* ¶ 42]. On January 9, 2024, Defendant placed Plaintiff on administrative leave with pay. [*Id.* ¶ 43]. After release from his involuntary commitment under the Baker Act, Plaintiff voluntarily checked himself in for treatment at the IAFF Center. [*Id.* ¶ 44]. Plaintiff requested FMLA leave on January 29, 2024, which Defendant approved the same day. [*Id.* ¶ 45].

Also on January 29, 2024, Defendant provided Plaintiff with an FMLA package with information and forms regarding FMLA leave. [ECF No. 76-2]. Defendant confirmed that he received the FMLA package. [*See* ECF No. 81-1 at 221:2–222:7]. In the package, Defendant included a Return to Duty Authorization form, informing Plaintiff that the form "must be completed by your health care provider based on your health care provider's review of your job description and submitted to the Human Resources Department prior to your return to work following continuous FMLA leave." [ECF No. 76-2 at 2; *see also id.* at 25–26]. Defendant supplied a job description to Plaintiff that was to be provided to his health care provider along with the Return to Duty Authorization form. [*Id.* at 3]. At Plaintiff's request, Defendant approved Plaintiff for FMLA leave from January 19 to March 4, 2024. [ECF No. 79 ¶¶ 45–47].

Dr. Morris was the Medical Director at the IAFF Center. On February 21, 2024, Dr. Morris authored a letter stating that Plaintiff was "cleared to return to work without any restrictions on February 26, 2024." [*Id.* ¶ 50]. Defendant received the letter on or around that date. [*Id.* ¶ 51]. Also

on February 28, 2024, Defendant's Human Resources Director issued a written directive to Plaintiff stating as follows:

> [T]he City is requiring you to partake in a psychological fitness for duty evaluation with Harvey V. Stock, Ph.D. As part of the City's protocol, you are being placed on Administrative Leave with Pay beginning March 4, 2024, pending the results of a Fitness for Duty Evaluation, as payroll records and your confidential medical file, indicate that you are currently on Family Medical Leave Act ("FMLA") leave, which began on January 19, 2024 and will continue through March 4, 2024.

[*Id.* ¶ 52].

On April 9, 2024, Dr. Stock's report concluded that Plaintiff "should be considered Permanently Unfit for Duty." [ECF No. 79 ¶ 56]. On May 8, 2026, a psychologist treating Plaintiff, Dr. Cheresnick, separately authored a letter recommending that Plaintiff be reinstated, as he was "mentally fit to perform his duties as a firefighter." [*Id.* ¶ 69]. On May 28, 2024, Defendant issued a Notice of Termination to Plaintiff based solely on the findings of Dr. Stock. [*Id.* ¶¶ 59–65].

Defendant's FMLA policy indicates that it may require a fitness for duty certification upon an employee's return from FMLA leave, stating as follows:

> The City will provide to each employee requesting FMLA leave a FMLA Request form, which is available in the Human Resources Department. Depending on the nature of FMLA leave sought, employees may be required to submit medical certifications supporting their need for FMLA-qualifying leave. There generally are three types of FMLA medical certifications that the City may require: an initial certification, a recertification, and a return to work/fitness for duty certification. It is the employee's responsibility to provide the City with timely, complete and sufficient medical certifications. Whenever the City requests employees to provide FMLA medical certifications, employees must provide the requested certifications within the time specified, unless it is not practicable to do so despite an employee's diligent, good faith efforts.

[*Id.* ¶ 67]. During a deposition, Defendant's representative indicated that it has "an unwritten policy to send any employee who makes a threat of violence to themselves or others, or who commits an actual act of violence to undergo an independent psychological evaluation." [*Id.*

¶ 68]. This policy reflected a "concern by the city that the employee's actions or behaviors would 'compromise [the employee's] ability to provide public service.'" [*Id.*].

## II. STANDARD OF REVIEW

In reviewing a Report and Recommendation, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1)(C), and "need only satisfy itself that there is no clear error on the face of the record" to accept the recommendation. Fed. R. Civ. P. 72 advisory committee's note to 1983 amendment, subdivision (b).

District courts retain broad "discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1259 (11th Cir. 2022) (quoting *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009)).

## III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir.

2013) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007)). Importantly, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter," but only "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## IV. RULING ON PLAINTIFF'S OBJECTIONS

Before the Court reaches Plaintiff's enumerated Objections, it will address Plaintiff's general contention that the R&R "repeatedly focus[ed] on highly prejudicial background facts." [ECF No. 88 at 3]. Plaintiff claims, without any specific citations, that the "R&R effectively allows moral disapproval and public-safety concerns to overshadow the statutory reinstatement analysis required by the FMLA." [*Id.*]. The Court acknowledges the sensitive factual nature of this case but rejects this characterization of Judge Augustin-Birch's R&R. The facts section of Judge Augustin-Birch's R&R largely cites the parties' own Joint Statement of Undisputed Facts [*see* ECF No. 87 at 2–6 (citing ECF No. 79)] and otherwise refers to the parties' evidence submitted before the Court. There is no indication that Judge Augustin-Birch went beyond the proper function of the court, which requires a discussion of the facts to apply the law. *See generally Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203 (11th Cir. 2021) (including extensive background on appellant's mental illness and referencing those facts when ruling on appellant's claims under the Rehabilitation Act, ADA, and FMLA).

Plaintiff lodges four Objections to Judge Augustin-Birch's R&R. After careful consideration and a *de novo* review of the record, the Court overrules each Objection and affirms Her Honor's R&R. Each Objection is discussed in turn below.

A. Plaintiff's Objection that the R&R misapplied the FMLA's reinstatement requirements under 29 U.S.C § 2614(a) and 29 C.F.R. § 825.312 [ECF No. 88 at 4] is **OVERRULED**.

Plaintiff's first Objection contends that the R&R "erred in concluding that Defendant lawfully refused to reinstate Plaintiff after Plaintiff submitted a fitness-for-duty certification from his treating health care provider." [ECF No. 88 at 4]. Title 29, United States Code, Section 2614(a)(1) entitles an eligible employee returning from FMLA leave "to be restored by the employer to the position of employment held by the employee when the leave commenced; or . . . to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." [*See also* ECF No. 88 at 4]. However, an employer may require a fitness-for-duty certification as a condition of restoration under 29 C.F.R. § 825.312. Under the FMLA, "[a]n employer may seek a fitness-for-duty certification only with regard to the particular health condition that caused the employee's need for FMLA leave." 29 C.F.R. § 825.312(b). The "employer may require that the certification specifically address the employee's ability to perform the essential functions of the employee's job." *Id.* "In order to require such a certification, an employer must provide an employee with a list of the essential functions of the employee's job . . . and must indicate in the designation notice that the certification must address the employee's ability to perform those essential functions." *Id.* After the employer satisfies those notice requirements, "the employee's health care provider must certify that the employee can perform the identified essential functions of his or her job." *Id.* Under 29 C.F.R. § 825.312(e), "[a]n employer may delay restoration to employment until an employee submits a required fitness-for-duty certification unless the employer has failed to provide the notice required . . . . If an employer provides the notice required, an employee who does not provide a fitness-

for-duty certification or request additional FMLA leave is no longer entitled to reinstatement under the FMLA."

Plaintiff acknowledges this statutory scheme [ECF No. 88 at 4–5], but argues that nothing in § 825.312 "authorizes an employer to reject a facially valid certification and substitute the opinion of an employer-selected physician as a mandatory prerequisite to reinstatement." [*Id.* at 5]. The problem is that Plaintiff fails to submit evidence that a facially valid certification was ever provided to Defendant. Plaintiff points to the letters of two doctors—Dr. Morris and Dr. Cheresnick—as fitness-for-duty certifications, but neither letter qualifies as such.

First, take Dr. Morris's letter. Plaintiff argues that "Dr. Abby Morris expressly stat[ed] Plaintiff was cleared to return to work 'without any restrictions.'" [ECF No. 88 at 6]. Viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that Dr. Morris's letter was the certification requested by Defendant. It is uncontested [*see* ECF No. 81-1 at 221:2–222:20] that Defendant's Human Resources Department notified Plaintiff that a Return to Duty Authorization form "must be completed by your health care provider based on your health care provider's review of your job description and submitted to the Human Resources Department prior to your return to work following continuous FMLA leave." [ECF No. 76-2 at 2]. Defendant provided Plaintiff with that job description. [*Id.* at 3]. Dr. Morris's letter, on the other hand, was in no way responsive to Defendant's requirement. Dr. Morris's letter simply served as "verification of [Plaintiff's] attendance and completion of the IAFF Center of Excellence for Behavioral Health Treatment and Recovery" program and included his Certificate of Completion. [ECF No. 81-27]. While the letter generally stated that Plaintiff "is cleared to return to work without any restrictions on February 26, 2024," it said nothing more. [*Id.*]. It did not mention Plaintiff's job description or discuss whether Plaintiff could perform the essential functions of his job. Neither does it reference the Return to Duty Authorization form required by the Defendant's Human Resources Department.

In fact, even Dr. Morris's declaration does not claim that she submitted a fitness-for-duty certification on behalf of Plaintiff. [ECF No. 66-1]. In her declaration, Dr. Morris states she "is aware of what a fire fighter's job entails including the essential functions of jobs having reviewed thousands of job descriptions over the years." [*Id.* at 6 ¶ 3]. This general statement does not indicate that she reviewed the essential functions of Plaintiff's job specifically. Dr. Morris calls her letter a "return-to-work letter," [*id.* at 6 ¶ 5], and further states that she was not contacted regarding whether she could "conduct a specific fitness for duty examination of Mr. Kelley." [*Id.* at 6–7 ¶ 6]. The declaration essentially concedes she did not conduct a specific fitness-for-duty examination of Plaintiff.

Next, take Dr. Cheresnick's letter. [ECF No. 49-1]. On May 8, 2024, Dr. Cheresnick authored a general letter [*see id.* (including a salutation of "To Whom It May Concern")], writing that her office had been seeing Plaintiff weekly. Dr. Cheresnick wrote that Plaintiff had "been compliant in all procedures and practices asked of him. He is committed to his sobriety and is a very active father in his children's lives." [*Id.*]. Further, Dr. Cheresnick wrote "[i]t is this office's opinion that [Plaintiff] be reinstated at his job and with his shift family. [Plaintiff] is mentally fit to return to perform his duties as a firefighter. He is eager to return to work and I see no reason why this should not happen quite soon." [*Id.*]. Once again, this letter does not discuss whether Plaintiff could perform the essential functions of his job, and by its clear language does not indicate review of Plaintiff's essential job functions. Neither does it reference the Return to Duty Authorization form required by the Defendant's Human Resources Department. So while Dr. Morris's and Dr. Cheresnick's letters may have certified that Plaintiff was able to resume work, they did not "certify that the [Plaintiff] can perform the identified essential functions" of his job. 29 C.F.R. § 825.312(b).

For these reasons, Plaintiff's Objections that the "FMLA does not permit an employer to require a second opinion from its own provider as a condition of reinstatement," and that Defendant cannot delay Plaintiff's reinstatement after a certification is provided, fail to address the actual issue.

[ECF No. 88 at 5 (citing 29 C.F.R. § 825.312(b))]. The lack of a first opinion makes it impossible for Defendant's evaluation to be a second opinion.

Furthermore, the R&R does not misapply or improperly distinguish *Langlois v. City of Deerfield Beach,* 370 F. Supp. 2d 1233 (S.D. Fla. 1999), as Plaintiff suggests. [ECF No. 88 at 7]. Judge Augustin-Birch correctly distinguished *Langlois* because the court in that case "concluded that the reports were fitness-for-duty certifications and that the employer should have reinstated the employee after receiving the certifications." [ECF No. 87 at 16 (citing *Langlois*, 370 F.Supp.2d at 1242)]. No such fitness-for-duty certifications exist in this case.

Accordingly, Plaintiff's first Objection is OVERRULED.

B. <u>Plaintiff's Objection that the R&R erroneously concluded that compliance with the ADA necessarily defeats Plaintiff's FMLA interference claim [ECF No. 88 at 8] is **OVERRULED**.</u>

Next, Plaintiff argues that Judge Augustin-Birch "conflate[d] two separate federal statutes protecting different interests and, in doing so, effectively permits the ADA to swallow the FMLA's independent restoration guarantee." [ECF No. 88 at 8]. Plaintiff's main concern is that the R&R "concludes, in effect, that because Defendant may have been permitted under the ADA to require a psychological fitness-for-duty examination, Defendant necessarily could deny Plaintiff restoration to his position without violating the FMLA." [*Id.*]. Plaintiff's argument here obfuscates the clear fact that under the FMLA, "[r]equirements under the [ADA], as amended, apply." 29 C.F.R. § 825.312(h). "After an employee returns from FMLA leave, the ADA requires any medical examination at an employer's expense by the employer's health care provider be job-related and consistent with business necessity." *Id.* "If an employee's serious health condition may also be a disability within the meaning of the ADA, the FMLA does not prevent the employer from following the procedures for requesting medical information under the ADA." *Id.* Plaintiff does not "dispute that 29 C.F.R § 825.312(h)

recognizes that an employer may continue to utilize ADA procedures following an employee's return from FMLA leave where the employee's serious health condition may also qualify as a disability." [*Id.* at 8].

The R&R squarely addressed Plaintiff's allegation "that Defendant violated the FMLA 'by having Plaintiff examined by someone other than his treating physician as a condition of reinstatement.'" [ECF No. 87 at 17 (citing ECF No. 1 ¶ 30)]. The R&R found that Defendant did not impose such a condition of reinstatement; instead, Defendant's choice to have its health care provider, Dr. Stock, examine Plaintiff was an independent decision allowed under the ADA, and therefore, was not in violation of the FMLA.[1]

Under Plaintiff's reading of the FMLA, an employer could terminate an employee after an examination pursuant to the ADA, but simultaneously, that same employee would be entitled to reinstatement under the FMLA. That reading does not make sense. As mentioned, the FMLA specifically states that ADA requirements still apply, which weighs against Plaintiff's reading. Ruling that Defendant could require the psychological fitness-for-duty examination under the ADA does not "supersede" the FMLA, [ECF No. 88 at 8], but rather in Plaintiff's own words, reflects the reality that the FMLA and ADA "may operate concurrently," [*id.* at 9].

Moreover, Plaintiff's Objection seems to characterize restoration following FMLA leave as guaranteed, but courts have been clear that there is no violation of the FMLA when there are independent grounds for an employee's termination. *See Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1267 (11th Cir. 2008) (explaining right to reinstatement "is not absolute; an employer can deny reinstatement 'if it can demonstrate that it would have discharged the employee had he not been on

---

[1] Plaintiff additionally claims that Judge Augustin-Birch's "reliance on *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306 (11th Cir. 2013), is misplaced." [ECF No. 88 at 9]. Judge Augustin-Birch cited *Owusu* for general statements of ADA law, and therefore, the Court does not find it necessary to address Plaintiff's efforts to distinguish *Owusu* from the instant case.

FMLA leave.'") (quoting *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001)). Defendant's decision to terminate Plaintiff was independent from Plaintiff's decision to take FMLA leave. Defendant placed Plaintiff on administrative leave with pay twenty days before Plaintiff requested FMLA leave. [ECF No. 79 ¶¶ 43–45]. Defendant routinely required employees to take psychological fitness-for-duty examinations after violent incidents [ECF No. 53 ¶¶ 73–74]. It is also undisputed that Defendant previously required Plaintiff to undergo a psychological fitness-for-duty evaluation for earlier incidents when Plaintiff did not take FMLA leave. [ECF No. 72 ¶ 31]. Based on Dr. Stock's findings that Plaintiff is "'hedonistic' . . . 'rarely thinks through the logical consequences of his behavior,'" and is likely to abuse cocaine when he feels "'significant stress,'" [ECF No. 52 at 8 (quoting ECF No. 81-22)], Defendant terminated Plaintiff, [ECF No. 79 ¶ 63]. In all, Plaintiff "cites nothing from the record to show that the [Defendant's] decision to end [his] employment related in any way to [his] decision to take FMLA leave." *Todd*, 998 F.3d at 1220.

As such, this OBJECTION is OVERRULED.

C. Plaintiff's Objection that the R&R erroneously concluded, as a matter of law, that Plaintiff failed to submit a fitness-for-duty certification under 29 C.F.R. § 825.312 [ECF No. 88 at 11] is **OVERRULED**.

Plaintiff further objects to Judge Augustin-Birch's conclusion "that Dr Morris's and Dr. Cheresnick's return-to-work letters 'were not fitness-for-duty certifications as contemplated under § 825.312(b)' because they 'did not address the essential functions of Plaintiff's job or his ability to perform them.'" [ECF No. 88 at 11 (citing ECF No. 87 at 11)]. The Court has already discussed and rejected this contention in Section IV.A above. Neither did the R&R shift any burden. [*See* ECF No. 88 at 13]. Defendant established that no reasonable fact finder could conclude that the return-to-work letters were fitness-for-duty-certifications. Plaintiff has failed to show a genuine issue for trial.

Additionally, the R&R did not "incorrectly treat[] certification regarding an employee's

essential job functions as an absolute requirement under § 825.312." [ECF No. 88 at 11]. Rather, the R&R determined that Plaintiff was on notice that he was required to submit a fitness-for-duty certification pursuant to § 825.312(b) and never met the requirement. [ECF No. 87 at 14–15].

Plaintiff next argues that there is a genuine dispute of material fact "as to whether Defendant complied with the regulation's prerequisites." [ECF No. 88 at 12]. First, Plaintiff states that Defendant's representative failed to identify Defendant's written policy on fitness-for-duty procedures. However, the statute does not require a written policy for fitness-for-duty procedures, it only requires that the policy is uniformly applied. *See* 29 C.F.R. §§ 825.312(a), 825.313(d). Plaintiff does not provide authority to suggest that written procedures are required.

Next, Plaintiff claims that Defendant gave Plaintiff's health care provider the incorrect job description, providing the description for a Fire Inspector instead of a Fire Lieutenant. [ECF No. 88 at 12]. This argument was not presented to the magistrate judge, [*see generally* ECF No. 47], and the Court declines to consider it here, *see Club Madonna Inc.*, 42 F.4th at 1259, at the very least because it fails to include citations to the record, evidence regarding whether the essential functions differ between the job descriptions, if at all, and a developed argument on how Defendant's job description failed to comply with statutory requirements.

In light of the foregoing, this OBJECTION is OVERRULED.

D. Plaintiff's Objection that the R&R improperly resolved a credibility dispute regarding whether Defendant sought clarification [ECF No. 88 at 15] is **OVERRULED**.

Plaintiff's final Objection contends that there is still "disputed fact concern[ing] whether Defendant actually contacted Dr. Morris to clarify her certification." [ECF No. 88 at 15]. The statute states that an employer "may contact the employee's health care provider for purposes of clarifying . . . the fitness-for-duty certification." 29 C.F.R § 825.312(b). The Court has already held that Dr. Morris's letter was not a certification, so there was nothing for Dr. Morris to clarify. Even if the Court

viewed Dr. Morris's letter as a certification, this disputed fact [*compare* ECF No. 81-26 at 101:19–102:7 *with* ECF No. 66-1 at 6–7 ¶ 6] would be an immaterial one. Under the statute, Defendant had the option, but not the obligation, to contact Dr. Morris. Plaintiff, as shown in his own briefing, understands that the word "may" is a "permissive term." [ECF No. 88 at 11].

As such, this Objection is OVERRULED.

E. <u>The Court adopts Judge Augustin-Birch's R&R for all other rulings.</u>

Given that the parties did not lodge any additional objections, the Court has reviewed Judge Augustin-Birch's other rulings for clear error and ADOPTS her R&R on those rulings. Specifically, Plaintiff did not object to Judge Augustin-Birch's R&R regarding his FMLA retaliation claim. [*See generally* ECF No. 88]. Under clear error review, the Court adopts the R&R on the FMLA retaliation claim and grants summary judgment in Defendant's favor as raised in its motion. [ECF No. 52].

## X. CONCLUSION

Accordingly, in view of the foregoing and upon due consideration, it is hereby **ORDERED AND ADJUDGED** as follows:

- The Report and Recommendation [**ECF No. 87**] is **AFFIRMED** and fully incorporated herein. Plaintiff's Objections [**ECF No. 88**] are **OVERRULED**.
- Plaintiff's Motion for Partial Summary Judgment [**ECF No. 47**] is **DENIED**.
- Defendant's Motion for Summary Judgment [**ECF No. 52**] is **GRANTED**.
- Defendant's *Daubert* Motion to Exclude Testimony of Plaintiff's Expert Witness and Incorporated Memorandum of Law [**ECF No. 54**] is **DENIED AS MOOT**.
- Defendant's Motion to Strike Dr. Abbey Strauss's Unsworn Declaration [**ECF No. 69**] is **DENIED AS MOOT**.
- Final Judgment will be entered by separate order.

**DONE AND ORDERED** in the Southern District of Florida on November 10, 2026.

**DAVID S. LEIBOWITZ**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record